IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GEORGE VARNELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CIV-08-176-F |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his concurrent applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

In his applications filed on December 22, 2003, Plaintiff alleged he became unable

to work on December 12, 2003. (TR 68-70). Plaintiff described previous work as an automobile mechanic, a municipal water pumper, and a cotton gin "ginner." (TR 88, 102). He also described work as a safety inspector in which he trained people who worked around hydrogen sulfide in the use of safety equipment. (TR 502-503). Plaintiff alleged that he became unable to work in December 2003 due to blindness in one eye, "bad knees, both wrists," a cyst on his head, a hernia, poor memory, glaucoma, tunnel vision, and headaches. (TR 87, 96-97).

The medical record reflects that Plaintiff has been treated frequently, with office visits generally occurring every one to two weeks, beginning in December 2002 by two family physicians, Dr. Cail and Dr. Robison, for a variety of complaints, including headaches, eye pain, back pain, wrist pain, knee pain, insomnia, and other issues. (TR 144-180, 264-355, 426-452, 466-488). Plaintiff has also sought treatment from an optometrist, Dr. Epp, who referred Plaintiff to an ophthalmologist in October 2004 although Plaintiff declined the referral. (TR 253-262, 255). Plaintiff subsequently agreed to a referral to an ophthalmologist, Dr. Patel, who examined Plaintiff in February 2005. (TR 243-250).

The record shows Plaintiff sought hospital emergency room treatment numerous times between April 2003 and June 2005, once in February 2007, and once in March 2007, seeking medications for headaches, eye pain, back pain, and other complaints. (TR 202-236, 360-394, 418-425, 490-494). Plaintiff underwent a consultative vision examination conducted by Dr. Rege in December 2006 (TR 405-407), a consultative physical examination conducted by Dr. Afaq in June 2004 (TR 181-186), and a consultative psychological evaluation conducted

by Dr. Swink in November 2006 (TR 408-417).

Plaintiff's applications were denied initially and on reconsideration. (TR 28, 29). At Plaintiff's request, a hearing *de novo* was conducted by Administrative Law Judge Levine ("ALJ") on August 16, 2006. (TR 495-534). At this hearing, Plaintiff appeared with a representative and testified that he was unable to work due to blindness in one eye, worsening "blurry" and "tunnel" vision in his other eye, carpal tunnel syndrome in both wrists, a back injury resulting in five "crushed" vertebrae in his lower and upper back, and migraine headaches. A medical expert ("ME") and a vocational expert ("VE") also testified at the hearing. (TR 505-517). Subsequently, the ALJ issued a lengthy decision in which the ALJ summarized the medical evidence and the testimony at the administrative hearing. The ALJ found that Plaintiff had a severe impairment due to blindness in his right eye, but the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 14-26). The Appeals Council declined Plaintiff's request to review the administrative decision. (TR 6-8). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the

ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2008); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the

national economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. The ALJ's Decision, Plaintiff's Claims, and Defendant's Defenses

Following the established sequential evaluation procedure, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date, December 12, 2003. (TR 16). At step two, the ALJ determined that Plaintiff had a severe, medically determinable impairment due to blindness in his right eye. In connection with the step two finding, the ALJ considered the medical evidence and found that Plaintiff's "depression, adjustment disorder, anxiety, pain disorder, back pain, right hand pain, [chronic obstructive pulmonary disease], and migraine headaches" did not cause "more than a minimal impact on [Plaintiff's] ability to perform basic work activities for 12 consecutive months" and therefore did not constitute severe impairments. (TR 16-17).

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that satisfied or medically equaled any of the listed impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ addressed the issue of Plaintiff's residual functional capacity ("RFC") for work. The ALJ determined that Plaintiff was capable of performing work

> compromised by monocular vision, an inability to balance, to work around unprotected heights or climb ladders or climb stairs at a rapid pace secondary to vision restriction and compromised by the limit of needing a break after sitting 3 to 4 hours at a time or standing or walking after 2 to 3 hours at a time [and] limited to lifting and carrying 25 pounds.

(TR 21). Relying in part on the VE's testimony, the ALJ found at step four that Plaintiff's impairments did not preclude him from performing his previous job as a safety inspector. (TR 24). Although the step four decision could have ended the evaluation of Plaintiff's applications, the ALJ alternatively found at step five that despite Plaintiff's impairments Plaintiff was capable of performing other work available in sufficient numbers in the economy, including the jobs of auto parts center sales clerk, service writer, and carburetor mechanic. (TR 25).

     Plaintiff has raised a number of claims of error concerning the ALJ's decision. Plaintiff contends that the ALJ erred by failing to provide sufficient reasons for rejecting or partially rejecting the opinions of his treating physician, Dr. Robison, and Dr. Robison's physicians' assistant. In support of this argument, Plaintiff refers to a statement completed by Mr. Evans, the physicians' assistant, in July 2005 (TR 264), a medical source statement completed by Dr. Robison on August 4, 2006 (TR 401-404) and another medical source statement completed by Dr. Robison on February 28, 2007 (TR 453-454). Plaintiff also contends that the ALJ erred at step four in relying on the ME's testimony. Plaintiff further contends that the ALJ breached her duty to develop the record for the Plaintiff by recontacting Dr. Robison. Finally, Plaintiff contends that the ALJ erred by failing to explain what weight, if any, was given to the report of the consultative visual examiner, Dr. Rege, or to the report of the consultative psychological examiner, Dr. Swink, concerning the effect that Plaintiff's vision problems would have on Plaintiff's ability to work. Defendant Commissioner responds that no error occurred with respect to the ALJ's evaluation of the

evidence and that there is substantial evidence in the record to support the Commissioner's decision.

IV. Analysis

    A. The ALJ's Assessment of Treating Physician Opinions and the Duty to Recontact Medical Sources

Plaintiff contends that the ALJ did not properly analyze the opinions of his treating physician, Dr. Robison, and Mr. Evans, Dr. Robison's physicians' assistant. In a related argument, Plaintiff asserts that the ALJ had a duty to recontact Dr. Robison for further clarification and explanation of his opinions.

When an ALJ considers the opinion of a disability claimant's treating physician, the ALJ must follow a specific procedure in analyzing the medical opinion. The regulations define "medical opinions" as:

> statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.

20 C.F.R. §§ 404.1527(a), 416.927(a).

Generally, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2). "[I]f the

opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id. In that event, the ALJ must determine what weight, if any, should be given to the opinion by considering such factors as:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1031 (quotation omitted). See 20 C.F.R. §§ 404.1527(d), 416.927(d). "Although the ALJ's decision need not include an *explicit discussion* of each factor, ... , the record must reflect that the ALJ *considered* every factor in the weight calculation." Anderson v. Astrue, __ F.3d __, No. 05-4305, at 8 (10th Cir. Apr. 3, 2009)(emphasis in original; internal citation and footnote omitted). The ALJ "must give good reasons ... for the weight assigned to a treating physician's opinion" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Watkins, 350 F.3d at 1300 (quotations omitted). The ALJ must also set forth specific, legitimate reasons for completely rejecting an opinion of an acceptable treating source. Id. at 1301.

Additionally, an ALJ must consider the findings of state agency medical and psychological consultants as opinion evidence. 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2).

Should the ALJ decide in his or her discretion to obtain the testimony of a medical expert, the ALJ must evaluate these opinions using the same rules used to evaluate treating physician opinions. 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2). An ALJ "may also use evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work," including evidence from nurse practitioners, physician assistants, naturopaths, chiropractors, audiologists, and therapists, educational personnel, social welfare agency personnel, and non-medical sources such as family members. 20 C.F.R. §§ 404.1513 (d), 416.913(d). The Social Security Administration has recognized in a ruling that "medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists" and therefore the opinions of these medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 90-03p, 2006 WL 2329939, at *3. The ruling specifies that the factors for weighing the opinions of acceptable medical sources apply as well to the opinions of non-acceptable medical or non-medical sources. Id. at *4.

In this case, there is no question that Dr. Robison qualifies as a "treating physician" for Plaintiff, and Dr. Robison's opinions must therefore be evaluated under the sequential analysis set forth in the regulations and the Watkins decision. Although Dr. Robison's physicians' assistant is not an acceptable medical source, the assistant's medical opinion may

9

provide evidence "to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d).

The physicians' assistant, Mr. Evans, at Dr. Robison's clinic completed a questionnaire in July 2005. In response to the questions on this form, Mr. Evans stated that Plaintiff had been a patient of Dr. Robison's beginning in September 2004, and that Plaintiff had previously been a patient of Dr. Cail "before switching over to us for pain management." (TR 264). However, there are office notes in the record from Dr. Robison showing Plaintiff was being treated by Dr. Robison beginning in March 2003, while he was also being treated by Dr. Cail. Mr. Evans stated on the form that Plaintiff had total blindness in his right eye but he had no knowledge of the medical diagnosis for this condition. Mr. Evans stated Plaintiff also had "chronic headaches and chronic osteoarthritis and joint pain, mainly back pain, decreased muscle strength in upper extremities and bilateral wrist pain," although Mr. Evans could provide no objective test results and pointed only to Plaintiff's "[s]ubjective" complaints as support for these diagnostic assessments. (TR 264). Mr. Evans stated he did not know the cause of Plaintiff's headaches or chronic pain around his right eye. (TR 264). Mr. Evans also indicated that Plaintiff was "self employed at this time" and assisted by his wife in his motor vehicle maintenance business. (TR 264). Mr. Evans stated Plaintiff could not sit for more than "[p]robably 4 hours" in a workday, could sit upright for 6 hours, could not stand for more than "[p]robably 4 hours" in a workday, could stand for "[p]robably 30 minutes" at a time, could not lift more than 20 pounds, and "would need breaks as needed" during the workday due to "chronic pain." (TR 264). Mr. Evans also stated that Plaintiff's

"musculoskeletal [and] back pain" were "controlled with his current medications," which he described as "narcotics [sic] pain medications." (TR 264). Mr. Evans suggested that "[n]arcotics can cause dizziness, drowsiness and unable [sic] to drive or use heavy equipment or operate machinery." (TR 264).

The ALJ obviously considered Mr. Evans' statement, as the ALJ's decision includes an accurate summary of the statement. (TR 18). Mr. Evans provided no objective findings to support his opinions concerning Plaintiff's functional limitations, and in her decision the ALJ recognized the lack of objective findings supporting Mr. Evans' statement. (TR 264). Mr. Evans provided no record of having treated Plaintiff on a consistent basis such that his opinion warranted a specific analysis using the factors employed for treating doctors' opinions. Moreover, Mr. Evans provided only a vague, generalized statement that he did not "feel" that Plaintiff could perform a full-time job and that Plaintiff's medications might generally impose additional functional restrictions. (TR 264). The physician's assistant surmised Plaintiff would need unspecified "breaks" during the workday. (TR 264). In the ALJ's RFC finding, the ALJ concluded that Plaintiff would "need[ ] a break after sitting 3 to 4 hours at a time or standing or walking after 2 to 3 hours at a time [and was] limited to lifting and carrying 25 pounds." (TR 21). Thus, Mr. Evans' statement is not inconsistent with the ALJ's RFC finding with respect to Plaintiff's need for breaks from sitting and standing requirements during the workday. Because of the absence of evidence of a long-term treatment relationship or other special factors that would warrant a more explicit analysis of Mr. Evan's statement, no error occurred with respect to the ALJ's analysis of the physicians'

assistant's statement on the above-described questionnaire form.

Dr. Robison completed two medical source statements, one in August 2006 and one in February 2007. (TR 401-404, 453-454). In the August 2006 statement Dr. Robison stated that "mostly subjective complaints" supported the diagnoses for Plaintiff's "back pain, anxiety, eye pain/headaches, and insomnia" being treated by the physician "since Sep [sic] 2004." (TR 401). Dr. Robison opined that Plaintiff could sit for 3 to 4 hours at a time, walk one to two blocks, stand for 2 to 3 hours, and lift up to 25 pounds. (TR 402). Dr. Robison also responded simply "no" to a query as to whether Plaintiff could complete a normal work week without marked interruptions from pain, fatigue, or physically based symptoms. (TR 402). Dr. Robison's February 2007 medical source statement indicates that the diagnoses and clinical observations or testing supporting those diagnoses are "attached," although the statement includes no attachments. (TR 453). In this statement, Dr. Robison opines that Plaintiff could sit for 2 hours at a time and four hours in a workday, walk one block, stand for a total of 4 hours and stand for one hour at a time, and lift ten pounds. (TR 454). He again simply responds "no" to the query as to whether Plaintiff could complete a normal work week without marked interruptions due to pain, fatigue, or physically based symptoms. (TR 454).

The ALJ considered these medical statements by Plaintiff's treating physician under the appropriate standards. The ALJ concluded that the medical statements were "of limited probative value" because the RFC limitations set forth in Dr. Robison's August 2006 statement were admittedly based on "mostly subjective complaints" and because Dr. Robison's February 2007 statement "failed to reference specific positive findings upon

specific physical examinations or laboratory testing to support the [RFC] restrictions" and the physician's records "largely reflect overwhelmingly negative findings upon physical examination despite the claimant's subjective complaints of a significant musculoskeletal condition." (TR 23).

Plaintiff presents conflicting assertions of error in her brief that, first, the ALJ did not give legitimate reasons for rejecting the opinions of Dr. Robison contained in the medical source statements and, second, the ALJ erroneously determined Dr. Robison's opinions were entitled to little probative value because the opinions "were supposedly based on subjective complaints." Plaintiff's Brief, at 17. Although the basis for Plaintiff's claim of error is not quite clear, what is clear from the record is that the ALJ provided succinct and valid reasons for according Dr. Robison's opinions limited probative value. These reasons are well supported by the medical record, as the ALJ accurately described it in her decision.

Even though the ALJ did not give Dr. Robison's opinions controlling weight, the ALJ's RFC finding is consistent with the sitting, standing, and lifting limitations described in Dr. Robison's August 2006 medical source statement. Plaintiff suggests that the ALJ misread the ME's testimony and assumed that the ME was adopting the same RFC limitations as those set forth in Dr. Robison's August 2006 medical source statement. Even if the ALJ did misread the ME's testimony, the misinterpretation is irrelevant.[1] The ALJ's RFC finding

---

[1] The ALJ states in her decision that the ME "concluded the claimant should be able to sit 3-4 hours, walk 1-2 blocks, stand 2-3 hours and lift nothing greater than 25 pounds." (TR 20). The ME's testimony in this regard is more aptly described as a summary of Dr. Robison's medical source statement opinions. (TR 519).

is consistent with the specific sitting, standing, and lifting limitations ascribed to Plaintiff by Dr. Robison in August 2006. The ALJ provided sufficient reasons for discounting the physician's later medical source statement and the physician's unsupported opinions that Plaintiff could not perform full-time work. Thus, Plaintiff has not shown that any error occurred with respect to the ALJ's evaluation of the treating physician's or physician assistant's opinions.

The medical evidence reflects that narcotic pain medications were prescribed or injected on a nearly continual basis beginning in December 2002, and for a lengthy period of time from both of his treating physicians, on the basis of his subjective complaints of headache pain, back pain, wrist and joint pain, and other symptoms despite the absence of persistent objective findings noted in the records of these physicians or in the records of Plaintiff's numerous hospital emergency room visits in which he also sought and received pain medications.

Plaintiff's contention that the ALJ should have recontacted Dr. Robison is also without merit. Plaintiff contends that the ALJ should have recontacted Dr. Robison to clarify the objective medical bases for his medical source statement opinions. An ALJ is obligated to "recontact [a] claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled." Maes v. Astrue, 522 F.3d 1093, 1097 (10th Cir. 2007)(citing 20 C.F.R. § 404.1512(e)). This obligation is created "when the report from [a claimant's] medical source contains a conflict or ambiguity that must be resolved, ... does not contain all the necessary information, or does not appear to be based on

medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). The ALJ did not reject Dr. Robisons' opinions based on any of these reasons. Rather, the ALJ adequately considered the factors relevant to the analysis of the treating physician's opinions and found that the opinions were not entitled to controlling weight but did have some probative value in determining Plaintiff's functional limitations, to the extent the opinions were supported by objective medical evidence in the record. Plaintiff relies on Robinson v. Barnhart, 366 F.3d 1078 (10th Cir. 2004), in which the Tenth Circuit Court of Appeals concluded that the ALJ should have contacted the claimant's treating psychiatrist where the psychiatrist opined that the claimant was disabled under the agency's Listing of Impairments due to multiple mental impairments. Robinson is distinguishable, however, because in that case the ALJ had not followed the Watkins analysis in reviewing the treating psychiatrist's opinion and the ALJ appeared to have rejected the opinion "based upon his own speculative lay opinion" that the claimant had failed to comply with prescribed treatment even though the psychiatrist never expressed or suggested such an opinion. Id. at 1083. The circuit court concluded that the ALJ should have contacted the treating psychiatrist after concluding that the psychiatrist's records did not provide a reason for his opinion. Id. at 1084. In this case, Dr. Robison clearly stated in his August 2006 statement that he was basing his opinion on Plaintiff's "mostly subjective complaints" of conditions. (TR 401). Nevertheless, the ALJ incorporated into the RFC finding the specific functional limitations assessed by Dr. Robison in this medical source statement. In his later statement, Dr. Robison referred only to "attached" diagnoses and medical findings but made

15

no effort to set forth the medical findings that supported his assessment of Plaintiff's functional restrictions. (TR 453-454). The medical record contained Dr. Robison's treatment records, and the ALJ's decision reflects careful consideration of those records and the objective findings therein. The ALJ found that those treatment records did not support the functional restrictions set forth in the February 2007 medical source statement, and this finding is well supported by the record. Thus, the ALJ had no obligation to recontact Dr. Robison to clarify his medical source statements.

B. <u>The ALJ's Assessment of the Reports of Consultative Examiners</u>

Plaintiff asserts that the ALJ also failed to explain what weight, if any, she gave to the diagnostic assessment of the consultative vision examiner, Dr. Rege. The record reflects that Dr. Rege examined Plaintiff's eyes in December 2006. The physician noted that Plaintiff described a right eye injury at age 16 that caused complete blindness in his right eye and gradually worsening vision in his left eye over the previous 10 years. (TR 405). Dr. Rege noted Plaintiff's statement that "nobody can figure out what is wrong with his left eye." (TR 405). Following his examination of Plaintiff, Dr. Rege noted that Plaintiff's left eye showed questionable signs of macular degeneration but that with eyeglasses Plaintiff had 20/60 vision in his left eye. (TR 405). Dr. Rege recommended that Plaintiff pursue a consultative evaluation by a "retinal" specialist. (TR 405). In her brief, Plaintiff suggests that there is other medical evidence to support "a diagnosis of macular degeneration" and therefore this condition constitutes a severe impairment. However, Plaintiff points to one record showing Plaintiff himself provided a medical history including "macular degeneration." (TR 492).

This subjective statement does not constitute medical evidence of a severe impairment. Plaintiff also points to Dr. Swink's report of his consultative psychological evaluation of Plaintiff. Dr. Swink noted in an RFC assessment that Plaintiff had "alleged [a] visual impairment" that "poses some limitation in close work involving visual perception." (TR 415). None of these records, including Dr. Rege's report of his consultative eye examination of Plaintiff, reflect a firm diagnosis of macular degeneration. No other eye specialist has noted that the Plaintiff's left eye vision is reduced by macular degeneration. As the ALJ pointed out, there is evidence in the record that Plaintiff's vision in his left eye fluctuates as a result of a "functional" vision loss rather than an objective medical condition and that an eye specialist noted Plaintiff's responses to visual testing were inconsistent. (TR 238, 247). Another eye specialist noted he found no objective basis for Plaintiff's complaints of reduced left eye vision and eye pain. (TR 255). Thus, the ALJ did not err in finding that Plaintiff's severe impairments did not include macular degeneration in his left eye. In the RFC assessment prepared by Dr. Swink, who is a psychologist, following a consultative psychological evaluation of Plaintiff, Dr. Swink did not provide a firm diagnosis of macular degeneration. Dr. Swink noted in his report of the December 2006 consultative evaluation that Plaintiff could "count [Dr. Swink's] fingers correctly from six feet and had no difficulty negotiating the office or picking up and manipulating objects." (TR 412). Dr. Swink also noted that although Plaintiff complained of chronic back and eye pain, the alleged "pain conditions did not manifest markedly during the clinical interview." (TR 412-413). Dr. Swink opined that Plaintiff exhibited only slight or no functional limitations in work-related

abilities caused by pain and visual impairments. (TR 414-415). Because the ALJ considered Dr. Swink's report and accompanying assessment of Plaintiff's functional restrictions and because the consultative psychological examiner's finders were not inconsistent with the ALJ's RFC assessment, the ALJ did not err in failing to explain the weight given to Dr. Swink's opinion. Nor has Plaintiff shown that his visual impairment would preclude his performance of the jobs identified by the VE as falling within Plaintiff's RFC for work.

The VE testified that an individual with Plaintiff's RFC for work, as found by the ALJ, could perform the requirements of Plaintiff's previous job as a safety technician and also could perform the requirements of other jobs available in the economy, including the jobs of auto parts counter sales clerk, service writer, and carburetor mechanic. (TR 523-525). There is substantial evidence in the record to support the ALJ's findings that Plaintiff is not disabled either because he can perform one of his previous jobs or he can perform other work available in the economy. Consequently, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____April 28[th]_____, 2009, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th

Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___8th___ day of _____April_____, 2009.

*/s/ Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE